The opinion of the Court was drawn up by
Appleton, J.
By R. S., c. 51, § 53, it is enacted that " when a railroad corporation shall have mortgaged its railroad and franchise to secure the payment of any of its bonds and coupons, whether such mortgage was made directly to the holders of such obligations, or to trustees for their use, the refusal or neglect to pay any such bond or coupon, within ninety days after its presentment, (subsequent to its pay day,) to the treasurer or president for payment, shall be deemed a breach of the condition of the mortgage.”
The section in terms explicitly refers to two classes of mortgages — one directly to the bondholders — the other "to trustees for their use.”
When the mortgage is made directly to the bondholders, they have the rights and privileges of mortgagees.
If the mortgage is to trustees, for the use of the bondholders, the 54th and the eight following sections of c. 51, define the rights, duties and powers of such trustees and pro *562 vide for the foreclosure of the mortgage by them, in their trust capacity, and for the creation of a new corporation composed of the bondholders, for whose use the franchise of the railroad had been conveyed to them in trust.
The Act of 1858, c. 80, under which the proceedings in question were had, relates " to trustees of railroads.” It provides for the meetings of the bondholders, the removal of trustees, and the election of new ones, and for the transfer of the estate mortgaged from the old to the new trustees.
It is claimed, that the deed of the York and Cumberland Railroad Company to John Gr. Myers, of the date of Eeb. 6, 1851, is to be regarded as a deed of trust within the intent and meaning of the statutes to which reference has been made.
The deed from the corporation is signed by its president and treasurer, and sealed with its seal. It recites that, in consideration of the sum of one dollar, paid by John Gr. Myers, of Portland, &c., "the receipt whereof we do hereby for and in behalf of said corporation acknowledge, and in consideration of the stipulations contained in the contract of said Myers, hereinafter mentioned, do hereby give, grant, bargain, sell and convey, for and in the name and behalf of said corporation, unto the said Myers and his assigns, who shall become holders of the bonds and coupons hereinafter mentioned, each in the ratio of the bonds so held by him, the franchise of said corporation, with all its privileges and immunities, &c., &c., * * * to have and to hold the aforegranted and bargained premises, with all the privileges and appurtenances thereof, to the said Myers, his heirs and assigns, and to the holders of said bonds and coupons, to their use and behoof forever.” * * * "Provided nevertheless, that if said corporation, their agents, or assigns, pay to the said Myers or 'his assigns, who shall become the holder or holders thereof, the amounts specified in the several bonds and coupons for interest pertaining thereto, that shall be issued concurrently with these presents and also such as shall hereafter be issued by the directors of said corpora *563 tion, according to, and to satisfy the terms of the contract existing between said corporation and said Myers, bearing date the fifth of August, A. D., 1850, and as modified in writing on the sixth of February, 1851, for the construction and equipment of said railroad, as by reference to said contract and the records of the company will fully appear; each of said bonds being numbered consecutively -from one to the sum total thereof, requisite for the completion of said road according to said contract, and each being issued only by the previous specific vote therefor of'the said directors at their meeting duly notified; and if the said payments shall bo made, as the same shall respectively become due, according to the terms of said bonds and coupons; and if said contracts shall also be fully performed by said corporation in all other respects, then this deed shall be null and void thereafter, otherwise the same shall remain good and in full force.”
There is a further condition, that if the bonds and coupons should not be paid within sixty days from maturity, that the holder or holders of such unpaid bonds may take possession of the mortgaged premises for the common benefit of the holders of all the bonds and may sell the same, &c., &c.
By the statute in question, the deed of mortgage is to be made "to trustees for their (the bondholders’) use” — to trustees "of the holders or owners of bonds secured by the deed creating said trust.” The trustees are authorized "when not inconsistent with any of the provisions of the deed creating the trust,” &c., to take possession of the road on certain contingencies’ expressed in the statute. The trustees are authorized " as fully as a board of directors of said road for the time being to take charge of and manage said road,” &c., and to do all things in the management of said road that a board of directors might lawfully do, with the right to prosecute and defend suits in their names as trustees, and to do all other things, which the corporation itself might legitimately do.” " When the dishonored bonds and coupons secured by the deed in which the trust is created, shall have *564 been paid, said trustees shall surrender said road,” &e. The bondholders are "to vote such instruction to the trustees as they may deem advisable, and if not inconsistent with the duties prescribed in the deed of trust,” &c., and to "prescribe the compensation of the trustees.” When the mortgage is foreclosed, the foreclosure is to " enure to the benefit of all the holders of the bonds and coupons provided for in its condition,” who are constituted a new corporation. Provision is made for the appointment of new trustees in case of death or resignation or removal of those first appointed, and for the election of new ones in their place, "who shall take and. hold in trust the property embraced in the mortgage according to the terms thereof.” R. S., 1857, c. 51, §§ 53, 54, 55, 56, 57, and stat. 1858, c. 30, § § 1 and 2, &c.
The statute most manifestly relates to "trustees of railroads” created by deeds of trust, in which the trusts are set forth, and the powers and duties of the trustees are defined. It refers to trusts created by deed in contradistinction to trusts incidentally arising under a mortgage by and from the transfer of the claims secured by the mortgage. It treats mortgages and trusts as distinct. It recognizes their diversity. It negatives their identity.
The relations between Myers and the Y. & C. Railroad are apparent from and are disclosed by the mortgage. Myers was the party contracting with them. The contract was thereby secured. Bonds were to be issued to him under the contract, according to its terms and conditions. It was the expectation of the parties that they' would be assigned, and it was their intention that when assigned, they should still be secured- by the mortgage, as they were before such assignment. The mortgage expresses, in terms, the rights of the parties as they would be regarded in a Court of equity, after the mortgagee has transferred the debt secured in whole or in part without transferring the mortgage. In such case, he holds the estate in the nature of a trust for the holders of the demands assigned,, and the mortgagee is to *565 be treated as a trustee. Johnson v. Candage, 31 Maine, 30; Moore v. Ware, 38 Maine, 496. The mortgage deed expresses in words what a court of equity would imply without such words.
By the terms of the deed, Myers is simply mortgagee. He is not named as trustee. He is not trustee in fact, though he may by his own act thereafter become one. The contract secured is with him. It is his contract. The bonds to be issued under it are his. If he keeps the contract and bonds without transferring any, he remains simply a mortgagee. The deed to him on its face and at its inception is not a trust deed within the statute, for that contemplates a deed, where the trust, the trustee and the cestui que trust are all created by one and the same instrument. But here, until Myers makes a transfer, he is mortgagee and that alone. It would be absurd to say that he holds the mortgage in trust for himself, before he has assigned any of the bonds of the corporation, and that he is both trustee and cestui que trust.
If Myers should transfer the bonds or a portion of them, then, undoubtedly, according to the decisions of this Court, he holds the estate as mortgagee for so much of the mortgage debt as is not transferred, and in trust for the holders of the portion transferred. But the trust in such case arises not because the mortgage was originally one of trust, but from the transfer and by operation of law. Whether any trust relations shall ever exist, will depend upon the will of the mortgagee. But in such case there would be no "deed of trust” "to trustees for their (the bondholders’) use.” The trust would spring into existence, when the transfer should be made, and not before. This is in no wise different from any mortgage deed. In all mortgages, the mortgagee may assign a part of demands secured, and he is deemed in equity as holding the title in the nature of a trust for all parties secured by the mortgage. Yet the mortgagee, as such, and before he transfers, is not deemed a trustee — nor after *566 such transfer, is he to be regarded as a trustee within the meaning of the Act.
The provisions of the statute, to which we have referred, are entirely inapplicable to an ordinary mortgage. They imply the whole estate as in the trustee and in him alone. But under the deed of mortgage, if Myers were to transfer a part of the bonds, retaining the residue, it has been seen that he would be mortgagee for such residue. But if the trust arising consequent upon the transfer and in virtue theréof were to be deemed a trust, such as the statute intends, then would Myers after such transfer be mortgagee and trustee — mortgagee for the remaining interest— trustee for whatever he may have transferred. The holders of the transferred bonds might meet, depose the mortgagee from his position as trustee, appoint a new trustee, and the legal title of the mortgage would be in Myers as mortgagee and in the new trustee. Indeed, they might proceed to form a new corporation, which would consist of but a portion of the bond holders. But such results are entirely inadmissible — and at variance with the purpose, object and intent of the Legislature.
Even if it were to be said that all the bonds were in fact transferred when the mortgage was made, (though it manifestly was not so,) still, such assumption would not alter the conclusion to which we must inevitably arrive. Myers would still remain mortgagee for his contract, and would be entitled to his rights as such. He might be treated as a trustee, holding the estate mortgaged in the nature of a trust for the bondholders in the ratio of and according to their interest, but the legal title would be in him, and though they might as cestuis que trust be entitled to the aid of a court of equity, to protect their rights, it is not perceived how they could divest Myers of such legal estate.
The statute most obviously does not contemplate one and the same person as trustee and mortgagee, with opposing and conflicting interests, as viewed in one or the other capacity. It does not contemplate the cotemporaneous existence *567 of a mortgage and a trust as created by and derived from one and the same instrument. Yet it is apparent that such results would naturally flow, from the position that Myers, besides being mortgagee, was to be treated as trustee under the statute.
The conflict of interests and duties and rights which would exist, if the construction contended for was given to the mortgage to Myers, is most apparent. Myers, as mortgagee, might wish to foreclose. The bondholders might not desire a foreclosure. As trustee, he would be bound to obey their directions — as mortgagee, he is at liberty to follow his own preferences. The trustee may be compelled to transfer the estate at any time. The mortgagee is not obliged at all to transfer it. He may release and discharge the mortgage upon payment. The former is entitled to compensation, the latter is not. The one is a mere agent for the cestui que trust. The other is personally interested. The legal title is in the mortgagee — such is the rule of law. Does it change, as each bond is transferred — and a certain proportion of the title pass from Myers as mortgagee to Myers as trustee ?
But it is unnecessary further to examine the subject. The statute contemplates a deed of trust, and the mortgage to Myers was not one within its letter or its spirit.
It is not material to the present inquiry to determine whether the mortgage confers a power to sell, or whether, if it does, the power is, or is not well executed. The settlement of those questions, howsoever they may be decided, does not affect the subject matter of our present investigation.
The election of trustees was unauthorized by the statute, and the proceedings must bo dismissed.
Tenney, C. J., Cutting, Goodionow and Davis, JJ., concurred.